UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

Tia Pritchett,

                              Plaintiff,

            v.

Nancy A. Berryhill, Acting Commissioner
of Social Security,

                            Defendant.

**Decision and Order**

17-CV-719-HBS

(Consent)

―――――――――――――――――――――――――――

**I.     Introduction**

This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of defendant, Commissioner of Social Security, that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits ("DIB") and/or Supplemental Security Income Benefits ("SSI"). Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties filed cross motions for judgment on the pleadings. Dkt. Nos. 11, 13. For the reasons set forth in this opinion, plaintiff's motion is DENIED and defendant's motion is GRANTED.[1]

**II.    Background**

    **A.    Procedural Background**

On May 16, 2014, plaintiff Tia Pritchett filed applications with the Social Security Administration ("The Administration") for DIB and SSI. Tr. 12. She alleged a disability onset date beginning February 1, 2012. *Id*. On July 14, 2014, The Administration denied these applications, finding that plaintiff was not disabled. *Id*. Seeking review of The Administration's decision, plaintiff subsequently requested a hearing with an administrative law judge ("ALJ"). *Id*.

―――――――――――――――
[1] The parties consented to Rule 73 jurisdiction on May 11, 2018. Dkt. No. 15.

1

On August 22, 2016, ALJ Rosanne M. Dummer held a video hearing with plaintiff. Following the hearing, the ALJ issued a decision dated September 23, 2016, in which she determined that plaintiff was not disabled. Tr. 26. Plaintiff sought review of the ALJ's decision from the Appeals Council. Tr. 1. On June 2, 2017, the Appeals Council denied plaintiff's request for review. *Id*.

Having exhausted the administrative appeals process, plaintiff filed a complaint with this Court. She asserts that the findings of the ALJ were not supported by substantial evidence, and thus requests that this Court reverse and remand the decision of the Commissioner for further administrative proceedings.

### B. Factual Background

Plaintiff was born October 29, 1987. Tr. 72. At the time of her application for DIB and SSI, she was twenty-six years old. *Id*. At her hearing, plaintiff testified to an educational background that included a GED, an associate's degree in graphic design, and the completion of an eight-month cosmetology program. Tr. 42, 47. She also testified that she has two children who live with her. Tr. 44. The ALJ found that plaintiff's past relevant work experience included jobs as a housekeeper and laundry attendant. Tr. 24. Plaintiff's alleged impairments included myopia and depression, which the ALJ determined to be severe. Tr. 15.

### C. Medical Evidence

#### 1. Summary of Treatment History

On October 6, 2014, plaintiff presented to Neighborhood Health Center ("NHC") for therapy intake. Tr. 347. She was diagnosed with depression. *Id*. Plaintiff attended therapy and received psychiatric medications at NHC consistently until December of 2015. Tr. 347–459. Her symptoms were reported to be relieved by antidepressants and psychotherapy. Tr. 514, 516, 518,

520. On October 27, 2015, plaintiff first reported auditory and visual hallucinations, Tr. 524, but admitted in August 2016 that she knows the things she hears and sees are not real. Tr. 496.

During her December 21, 2015 appointment, plaintiff was informed that she required more psychiatric care than what could be provided by a primary care office like NHC. Tr. 459–60. Her care provider noted that, although a schizophrenia diagnosis was uncertain, plaintiff's hallucinations and major depressive disorder were "concerning." *Id*. Plaintiff was referred to the Lakeshore[2] facility. *Id*. After the December 2015 appointment, plaintiff did not return to NHC until July 2016. Tr. 461. During her July 2016 appointment, she stated that she had not attended the psychiatric care recommended to her in December 2015 due to conflicts with her school schedule. *Id*. She expressed interest in resuming therapy because she recently finished her educational program. *Id*. She also reported that her depression had improved, and her sleep and appetite were normal. *Id*.

On August 4, 2016, plaintiff visited Cheri Dietz, MSW, at Erie County Medical Center for an initial evaluation. Tr. 536. Ms. Dietz deemed plaintiff fit for counseling with her at ECMC, and scheduled her for an assessment with a psychiatrist, Dr. Zachariah, on August 31, 2016. *Id*. The administrative record shows that plaintiff had only one additional visit with Ms. Dietz on August 18, 2016. Tr. 535. The record does not contain treatment notes from the appointment that Ms. Dietz scheduled plaintiff to have with Dr. Zachariah on August 31. Consequently, the record is not clear as to whether the scheduled appointment occurred.

2. Dr. Santarpia's Medical Opinion

On July 24, 2013, plaintiff visited psychologist Susan Santarpia, Ph.D., for a consultative examination. Tr. 324–27. Dr. Santarpia assessed that plaintiff had Mood Disorder, NOS, and

---

[2] The reference here to Lakeshore likely means Lake Shore Behavioral Health in Buffalo, N.Y., but the record does not make this clear.

3

alcohol dependence/abuse in sustained remission. Tr. 326. Plaintiff was noted to have average to below average cognitive functioning. *Id*. Plaintiff's reported activities included laundry, shopping, finance management, cooking, cleaning, and taking care of her two children. *Id*. Dr. Santarpia concluded that the results of her evaluation were not consistent with psychiatric problems that would interfere with plaintiff's ability to function on a daily basis. *Id*.

### 3. Dr. Zachariah's Medical Opinion

On September 1, 2016, psychiatrist Brian Zachariah issued a medical opinion statement regarding plaintiff's mental impairments. He stated that his frequency and length of contact with plaintiff was "every two to every four weeks depending on medication adjustments and lethality." Tr. 529. Using a "check-the-box" style form, Dr. Zachariah indicated that plaintiff had fourteen symptoms of psychiatric problems. Tr. 530. These symptoms included thoughts of suicide, hallucinations, decreased energy, and disturbances of mood or affect. *Id*. Dr. Zachariah also opined that plaintiff's conditions would cause her to be "off-task" during more than 30% of an average work day, and that her impairments would cause her to miss more than four days of work per month. Tr. 532–33.

### C. Administrative Hearing

On August 22, 2016, plaintiff had an administrative hearing with ALJ Rosanne Dummer. Tr. 37. The hearing was attended by plaintiff, the ALJ, plaintiff's attorney, and Vocational Expert Donna Bardsley. *Id*.

During the hearing, plaintiff testified that she cannot work because she has poor vision and poor comprehension. Tr. 43. When asked by the ALJ if she was seeing anyone for mental health counseling, plaintiff responded that she was seeing Cheri Dietz at ECMC. Tr. 45. Plaintiff affirmed that she did not seek out the mental health clinic that her primary care facility referred

4

her to in December 2015 because she was attending cosmetology school. Tr. 46–47. While she was able to attend school full-time, Monday through Friday from 9:00am to 5:00pm, she often felt anxiety and panic in the classroom. Tr. 50–51. Plaintiff testified that her depression had "really taken a hold of [her]" due to problems with her sister. Tr. 49. She mentioned that she had an appointment scheduled with her therapist and "the doctor" on August 31, 2016, but did not specify the doctor's name or specialty. *Id*.

### D. The ALJ's Decision

On September 23, 2016, the ALJ issued a decision stating that plaintiff was not disabled. Tr. 26. She determined that, while plaintiff's severe impairments could be reasonably expected to cause her alleged symptoms, plaintiff's statements concerning the intensity of her symptoms were not entirely consistent with the medical evidence. Tr. 20.

The ALJ found that plaintiff did not have a work precluding mental condition. Tr. 21. She thought that plaintiff's claim of worsening depression was contradicted by her failure to seek mental health treatment between December 2015 and August 2016. *Id*. Plaintiff was also capable of completing cosmetology school; this indicated a normal level of functioning. *Id*. The ALJ further noted that plaintiff required only conservative care (medication and counseling with a social worker), and that her mental status examinations were generally normal. *Id*. While plaintiff testified that she experienced auditory and visual hallucinations, the record contained no evidence of a formal schizophrenia diagnosis. *Id*.

When weighing the medical evidence to determine plaintiff's residual functional capacity ("RFC"), the ALJ gave "some weight" to the consultative opinion of Dr. Santarpia. Tr. 22. She noted that Dr. Santarpia recommended counseling and vocational training, and that plaintiff has only required conservative care. *Id*. Contrarily, the ALJ assigned "little to no weight" to the

5

medical opinion of Dr. Zachariah. Tr. 23. She stated that, although Dr. Zachariah was a treating source, his opinion was not well supported by the evidence and thus not entitled to controlling weight. Tr. 24. "Conservative treatment and the absence of significant mental status and objective findings" were held to be inconsistent with the work precluding limitations that Dr. Zachariah opined to. *Id*. Specifically, the ALJ noted plaintiff's failure to seek psychiatric treatment, her improvement with conservative care, her enrollment in cosmetology school, and that her hallucinations were unsupported by a schizophrenia diagnosis as major inconsistencies with Dr. Zachariah's opinion. Tr. 23–24.

Ultimately, the ALJ calculated that plaintiff had the RFC to perform a full range of work at all exertional levels but with nonexertional limitations. Tr. 16. The ALJ asserted that this finding was supported by the medical evidence of record, conservative treatment with counseling and medication management, educational pursuits, reported activities, inconsistencies of plaintiff's statements, and the opinion of the consultative examiner. Tr. 24. Given this RFC, plaintiff was still capable of doing her past relevant work, Tr. 24, and thus the ALJ found that plaintiff was not disabled. Tr. 26.

### III. Discussion

The sole issue to be reviewed by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) ("[substantial evidence] is less than a

preponderance of the evidence but more than a mere scintilla"). The ALJ's disability determination must be upheld by this Court even if "substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### A. Disability Standard

For purposes of both SSI and DIB, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether plaintiff is currently working;

(2) whether plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents plaintiff from continuing past relevant work; and

(5) whether the impairment prevents plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review plaintiff's RFC and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). RFC is described as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). When determining RFC, the ALJ considers "all the relevant evidence in [a claimant's] case record." *Id*.

### B. Plaintiff's Arguments

Plaintiff's sole contention is that the ALJ erred in determining her RFC. An accurate RFC assessment is necessary for the ALJ to determine whether plaintiff is capable of performing past relevant work at step four of the disability determination process. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If substantial evidence does not support the ALJ's findings regarding the RFC assessment, then this Court must remand the case for further administrative proceedings.

Specifically, plaintiff asserts that the ALJ did not properly weigh the opinion evidence when determining RFC. She argues that the ALJ erroneously relied on Dr. Santarpia's medical opinion, and improperly rejected Dr. Zachariah's opinion. Thus, the ALJ's RFC assessment was not supported by substantial evidence and remand is required.

1. Dr. Zachariah's Medical Source Opinion

Plaintiff argues that the ALJ erred in assigning "little to no weight" to Dr. Zachariah's medical source statement. First, she asserts that because Dr. Zachariah is a treating physician, his opinion is entitled to controlling weight so long as it is supported by the medical evidence. *Rosa v. Callahan*, 168 F.3d 72, 78–79 (2d Cir. 1999). If a treating physician's opinion is inconsistent with other medical evidence of record, the ALJ need not give that opinion controlling weight; however, she must give "good reasons" for assigning a lesser weight. 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). Even if the ALJ provides "good reasons," she has an affirmative duty to develop the administrative record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). So, plaintiff argues, even if the ALJ provided "good reasons" for rejecting the opinion, she failed in her duty to develop the record because she did not re-contact Dr. Zachariah to clarify the inconsistencies she perceived. Thus, the opinion was rejected in error.

a. Treating Physician Rule

Plaintiff's argument turns on her assumption that Dr. Zachariah is a treating physician. The duty to re-contact a physician is triggered "[i]f the ALJ is not able to fully credit a treating physician's opinions because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed . . . ." *Urena-Perez v. Astrue*, No. 06 Civ. 2589(JGK)(MHD), 2009 WL 1726217 (S.D.N.Y. Jan. 6, 2009) (citing *Perez v. Chater*, 77 F.3d

9

41, 47 (2d Cir. 1996)). Thus, if Dr. Zachariah was not a treating physician, then the ALJ would not have been under an obligation to re-contact him.

A treating physician is "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2). An ongoing treatment relationship exists "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id*. If a claimant's relationship with a physician is based "solely on [her] need to obtain a report in support of [her] claim for disability," the administration does not consider the physician to be a treating source. *Id*. One of the reasons that treating sources are given great weight is because they are most able to provide a "detailed, longitudinal picture" of the claimant's medical impairments. *Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014).

Across multiple districts in this Circuit, courts have consistently held that a physician who examines a patient 1–3 times during a limited period does not typically have the kind of relationship that qualifies as a treating physician relationship for the purposes of the social security regulations. *See Jasen v. Comm'r of Soc. Sec.*, No. 16-CV-6153P, 2017 WL 3722454 at *10 (W.D.N.Y. Aug. 29, 2017) ("it is unclear whether [physician] qualifies as a treating physician because the record suggests that she met with [claimant] on only two occasions before rendering her opinion"); *Patterson v. Astrue*, No. 5:11–CV–1143 (MAD/DEP), 2013 WL 638617 at *8 (N.D.N.Y. Jan. 24, 2013) ("three examinations by [a physician] over the course of four months . . . does not constitute the type of 'ongoing relationship' that is required for finding that s/he is plaintiff's treating physician"); *Seaton v. Astrue*, No. 5:06–CV–0756 (LEK), 2010 WL

10

2869561 at *8 (N.D.N.Y. July 19, 2010) ("the ALJ's finding that . . . two visits did not constitute an 'ongoing treatment relationship' is reasonable and shall not be disturbed by this [c]ourt"); *Sapienza v. Shalala*, 894 F. Supp. 728, 733 (S.D.N.Y. 1995) ("[t]he administrative record provides substantial support for the ALJ's conclusion that [physician] was not a treating physician [;] [t]he record indicates that [he] had examined [plaintiff] only once").

Plaintiff has presented sparse evidence to show that Dr. Zachariah is a treating physician. The record does not contain any treatment notes from Dr. Zachariah. The treatment notes from social worker Cheri Dietz suggest that plaintiff had an appointment scheduled with Dr. Zachariah on August 31, 2016 (nine days after her hearing with the ALJ). Tr. 535–36. However, the record contains no evidence that plaintiff visited Dr. Zachariah on August 31. The only relevant record available is Dr. Zachariah's medical source statement, which is dated September 1, the day after her alleged appointment with plaintiff. Tr. 528–33. In his statement, Dr. Zachariah notes that his contact with plaintiff is "every two weeks to every four weeks," but he does not state anything about the total length or nature of the relationship. Plaintiff's hearing testimony does not contain any indication that she had ever met with Dr. Zachariah by the date of the hearing. Nor is there any hearing testimony suggesting that Dr. Zachariah considered plaintiff disabled, despite the fact that the ALJ specifically asked if any doctor has told her that she is disabled. Tr. 45. When asked if plaintiff "sees someone for mental health," she answered affirmatively mentioning Ms. Dietz, but she did not mention anything concerning Dr. Zachariah. Tr. 46.

The ALJ gave plaintiff the benefit of the doubt that Dr. Zachariah was a treating source, Tr. 24, despite herself questioning the nature of their relationship. Tr. 23–24 ("Although [Dr. Zachariah] noted contact every two to four weeks, Exhibit 13F implies that the claimant only saw Dr. Zacharian [sic] once on August 31, 2016"). The ALJ's acquiescence is not dispositive of

11

the issue. Courts may conclude that a physician is not a treating source despite the fact that the ALJ "casually mentions" that he is a treating source. *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 490 (*unpublished opinion*) (6th Cir. 2005) (holding that the treating physician rule was not implicated because the physician did not meet the requirements to be a treating physician despite the fact that the ALJ casually referred to the physician as a treating source).

Other circuits have held that a physician who only sees a claimant once may still be a treating source if he monitors the claimant alongside a team of care providers. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003) (stating that "the use of a team approach by medical providers is analytically significant" when determining if a physician is a treating physician); *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003). However, there is no indication in the record that Dr. Zachariah participated in plaintiff's care as a member of team. Dr. Zachariah appears to work in the same hospital as counselor Cheri Dietz, Tr. 528, 534, but the record reflects that plaintiff has merely had two visits with Ms. Dietz herself, both in the month of August 2016. Tr. 535–37. Dr. Zachariah's medical source statement does not specifically reference Ms. Dietz or her treatment notes, and plaintiff does not appear to have had contact with either of them until less than a month before her hearing. Thus, the situation in this case is distinguishable from that in *Benton ex rel. Benton v. Barnhart*, where a psychiatrist (whose treating physician status was upheld) was a supervisory member of plaintiff's care team for more than one year before issuing a Mental RFC assessment. 331 F.3d at 1033–34.

The regulations state that a treating source is one that has had an "ongoing treatment relationship" with plaintiff. 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2). The Administration recognizes that this relationship arises *when the medical evidence establishes* that a claimant has seen a source with frequency consistent with what is usual for her condition. *Id*. By the ALJ's

generous interpretation, plaintiff saw Dr. Zachariah only once, nine days after her administrative hearing and four years after her alleged onset date. This limited relationship could not possibly reveal a "detailed, longitudinal picture" of plaintiff's depression that has been ongoing since her alleged onset date of 2012. The conclusion that plaintiff wants is not supported by cases across the Second Circuit. *See Jasen*, 2017 WL 3722454 at *10; *Patterson*, 2013 WL 638617 at *8; *Seaton*, 2010 WL 2869561 at *8; *Sapienza*, 894 F. Supp. at 733. For these reasons, Dr. Zachariah was not a treating physician.

      b.  Duty to Re-contact

For the reasons discussed in Section III-B-1-a of this opinion, Dr. Zachariah is not a treating physician and thus the duty to re-contact him is not triggered. However, even if Dr. Zachariah qualified as a treating source, the ALJ still would not possess an obligation to re-contact him for the purposes of clarification in this particular case.

A treating physician's opinion is given controlling weight when an ALJ is evaluating the severity of a claimant's conditions, unless that physician's opinion is inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). If the ALJ does not give controlling weight to a treating physician's opinion, she must give "good reasons" explaining the weight that was assigned to the opinion. *Id*.

Furthermore, the ALJ has an affirmative duty to develop the administrative record of a Social Security claimant. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Accordingly, the ALJ "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). If the record does not contain any clear gaps, and the ALJ already possesses a "complete medical history," then the ALJ is not under obligation to re-contact a treating physician. *Ayers v. Astrue*, No. 08–CV–69A,

2009 WL 4571840 at *2 (W.D.N.Y. Dec. 7, 2009). The *Ayers* court further clarified that a treating physician's opinion's mere inconsistency with the record is not sufficient to trigger the duty to re-contact. *Id*. Ultimately, the duty to re-contact does not arise unless the record is insufficient for the ALJ to determine whether a claimant is disabled. *Id*.

*Rosa v. Callahan* is illustrative of a situation where a duty to re-contact a physician clearly arises. *Rosa*, 168 F.3d at 79. In that case, there were gaps in the administrative record that "should have prompted the ALJ to pursue additional information." *Id*. These gaps were ascertained by the court due to discrepancies in the claimant's hearing testimony and the rest of the record. *Id*. The claimant testified that she had seen her treating physician on a monthly basis for a period of years, but the record contained treatment notes reflecting a mere nine visits. *Id.* at 80. Furthermore, the physician's opinion was one page in length, which the court felt was insufficient considering the length of time the claimant treated with the physician. *Id*. The court concluded that because the ALJ did not re-contact the physician to clarify, she was forced to base her conclusions on "incomplete information." *Id*.

Plaintiff's only assertion with respect to this issue is that if a treating source's medical source statement is "unquestionably inconsistent" with that source's answers to a questionnaire, the ALJ should further develop the record. Dkt. No. 11-1 at 13; *Stroud v. Comm'r of Soc. Sec.*, 2014 WL 4652581 at *10 (S.D.N.Y. Sept. 8, 2014). This argument cannot be applied to the facts of this case, however, because the record does not contain any treatment notes from Dr. Zachariah against which his questionnaire could be considered inconsistent.

In this case, no duty to re-contact would have existed if Dr. Zachariah was a treating physician. Unlike the plaintiff in *Rosa*, plaintiff in this case did not testify to a more extensive treatment history with her physician than what was indicated in the record. Indeed, plaintiff did

14

not mention Dr. Zachariah by name at all in her testimony. The record indicates that Dr. Zachariah's contact with plaintiff was limited to one visit, the day before he issued his medical source statement. Tr. 529, 535–37. Moreover, the evidence suggests that plaintiff's medical record is complete, and there was no reason for the ALJ to have assumed otherwise. Plaintiff affirmed in July 2016 (roughly 1.5 months before Dr. Zachariah issued his medical source statement) that, up to that point, she had not sought psychiatric treatment outside of her primary care facility due to conflicts with her school schedule. Tr. 46–47, 465. Additionally, there are extensive records pertaining to plaintiff's depression from her primary care facility where she had been receiving counseling between 2013 and 2015. Tr. 357, 375–76, 413, 424. These facts would explain the lack of treatment records from Dr. Zachariah, and affirm that the record is complete.

Plaintiff does not dispute that the ALJ provided good reasons for assigning Dr. Zachariah's opinion "little to no weight." Dkt. No. 11-1 at 13. Indeed, the ALJ's decision cites at length from the record in explaining her weight determination. Tr. 23–24. Because the record was otherwise complete and free of any gaps, the ALJ had sufficient information to make a disability determination and there was no duty to re-contact. *Ayers*, 2009 WL 4571840 at *2. For these reasons, it was appropriate for the ALJ to assign Dr. Zachariah's opinion less than controlling weight.

    2.    Reliance on a Consulting Physician's Opinion

Plaintiff also argues that the ALJ erred when determining RFC by assigning "some weight" to the opinion of state agency medical examiner Dr. Santarpia. She claims that the opinion is "stale" for two reasons: (1) it is dated three years prior to her administrative hearing, and (2) it is undermined by later evidence in the record that shows her depression worsening in the time between Dr. Santarpia's examination and the administrative hearing.

15

The report of a state agency medical consultant constitutes expert opinion evidence which may be given weight if supported by the medical evidence in record. *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). The opinions of consulting sources may constitute substantial evidence if they are consistent with the record as a whole. *Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y.2014). However, opinions that are "conclusory, stale, and based on an incomplete medical record" may not be considered substantial evidence to support the ALJ's finding. *Camille*, 104 F. Supp. 3d at 343. If a claimant's status regarding her impairments undergoes "significant deterioration" after a consultative examination, the examination may not constitute substantial evidence. *Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081 at *12 (W.D.N.Y. Mar. 4, 2016). A medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates "substantially similar limitations and findings." *See Camille*, 104 F. Supp. 3d at 344.

In support of her claim of deterioration following Santarpia's examination in July 2013, plaintiff offers the following evidence: (1) deaths in her family in 2013 and 2014 caused her condition to worsen; (2) she began suffering hallucinations in October 2015; (3) in December 2015, she was told she needed more treatment than what could be provided at Neighborhood Health Center; and (4) Dr. Zachariah opined about more substantial mental impairments in September 2016. Dkt. No. 11-1 at 11.

There is substantial evidence to support the ALJ's decision to give "some weight" to Dr. Santarpia's opinion based on its consistency with the record. For example, plaintiff testified that she attended and completed an eight-month cosmetology program that ended in July 2016. Tr. 47. Her ability to complete a vocational program is consistent with Dr. Santarpia's opinion that

the claimant can "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration . . . ." Tr. 326. It is also consistent with Dr. Santarpia's specific recommendation that plaintiff seek vocational training. Tr. 327. Dr. Santarpia noted in her report that plaintiff was providing care for her two children, Tr. 324, and she was still doing so at the time of her hearing. Tr. 44–45. As the ALJ points out in her decision, Tr. 21–22, there is evidence that plaintiff's condition has stabilized or improved with the kind of conservative care Dr. Santarpia recommended in her examination. Tr. 461 (claimant reports feeling less depressed, compliant with medication, sleeping and eating well in July 2016); Tr. 47 (claimant completed vocational school in July 2016); Tr. 496 (claimant reports knowledge that her hallucinations are not real in August 2016). This evidence indicates that plaintiff had "substantially similar limitations" as to what was opined by Dr. Santarpia throughout her entire period of alleged disability. *Camille*, 104 F. Supp. 3d at 344.

Plaintiff cites *Welsh v. Colvin* to support the assertion that "an opinion based on an examination prior to a deterioration of plaintiff's mental status cannot constitute substantial evidence supporting a determination." Dkt. No. 11-1 at 11; *Welsh*, 2016 WL 836081 at *12. The facts of that case significantly differ from the facts in this case. In *Welsh*, the court held that the ALJ incorrectly assigned "great weight" to an opinion by a consultative examiner that was made prior to deterioration of her mental condition. *Welsh*, 2016 WL 836081 at *12. The examiner noted that the claimant had no psychiatric hospitalizations, and that her prognosis was fair to good. *Id.* at *6. In the years after the examiner's opinion, plaintiff had several psychiatric hospitalizations, a hospitalization for drug overdose, an investigation by Child Protective Services, three weeks of inpatient mental health treatment, and electroconvulsive therapy. *Id.* at *12. *Welsh* obviously illustrates a much more significant decline than what plaintiff in this case

experienced. Plaintiff here did not require psychiatric hospitalizations, or any treatment beyond what Dr. Santarpia recommended in her opinion. She was also capable of child rearing and attending school at the time of her hearing. Accordingly, the rule from *Welsh* should not be applied in this case.

Plaintiff also implies that the ALJ erred by giving more weight to Dr. Santarpia's consulting opinion than to Dr. Zachariah's treating source opinion. Dkt. No. 11-1 at 11–12. It is true that when a treating source and a consulting source are in conflict, the treating source should generally be given greater weight when it is supported by the medical evidence. *Camille*, 104 F. Supp. 3d at 343; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). However, for the reasons described in section III-B-1 of this opinion, Dr. Zachariah was not a treating source. His opinion was given less weight than Dr. Santarpia's because the ALJ found it to be inconsistent with the record for reasons specified in her decision. Tr. 23–24. Therefore, the ALJ did not err in giving greater weight to Dr. Santarpia's opinion. 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4) ("[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion").

**IV. Conclusion**

The ALJ did not err when assessing plaintiff's RFC. The Commissioner's findings of fact were supported by substantial evidence in the administrative record. For these reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is DENIED and defendant's cross-motion (Dkt. No. 13) is GRANTED. The Clerk of the Court shall close this case.

SO ORDERED.

*/s Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: June 20, 2018